(No. 42188.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
DANIEL SLAUGHTER, Appellant.

*Opinion filed September 22, 1970.*

WARD, J., took no part.

APPEAL from the Circuit Court of Cook County; the Hon. JOSEPH A. POWER, Judge, presiding.

JULIUS LUCIUS ECHELES, of Chicago, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (THOMAS J. IMMEL, Assistant Attorney General, and ELMER C. KISSANE and ANTHONY MONTEMURRO, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County dismissing, after a hearing, Daniel Slaughter's amended post-conviction petition.

In November 1961, defendant was brought to trial on an indictment charging him with the murder of his wife. He waived his right to a trial by jury, was found guilty of the crime as charged and was sentenced to the penitentiary for a term of 14 years. On direct appeal to this court his conviction and sentence were affirmed. (*People* v. *Slaughter*, 29 Ill.2d 384.) Thereafter in 1965, petitioner filed a *pro se* post-conviction petition which was dismissed by the circuit

court on motion. On appeal, we reversed and remanded because petitioner was not afforded adequate representation by his court-appointed counsel. *People* v. *Slaughter*, 39 Ill.2d 278.

Consistent with our remand order, counsel was appointed and the instant amended post-conviction petition was then filed wherein he charged that his constitutional right to due process of law was denied him in that: (1) the prosecution was allowed to impeach his testimony at trial by statements given by him at a coroner's inquest at a time when he had no counsel, was not advised of his right to counsel, and did not waive such right; and (2) at the time of his trial he was mentally incompetent and unable to assist in his defense. The State's answer denied any violation of petitioner's constitutional rights and also asserted that defendant's direct appeal was *res judicata* as to the issues raised in the post-conviction petition. After a hearing in which the court considered the petition, the original trial record and minutes of the inquest, relief was denied and the cause dismissed.

It is not necessary to set forth all the facts surrounding the crime inasmuch as they are adequately presented in our opinion on petitioner's direct appeal. *People* v. *Slaughter*, 29 Ill.2d 384.

Regarding his claim that it was constitutionally impermissible to use his testimony from the coroner's inquest for impeachment purposes when it was given at a time when counsel was not present and he was not advised of his right to counsel, we find no error. We initially observe that petitioner's retained trial counsel objected to the use of the inquest testimony only on the basis that what was there said was not impeaching. And, we concur in the findings of the post-conviction hearing judge that not only were the inquest statements not impeaching but they in no way had any effect on the trial court's determination of guilt.

At trial, police officers George Boone and Anthony

Mayo testified as to the occurrence. On cross-examination of Officer Boone, defense counsel deliberately brought out that Slaughter told the officer during questioning that he (Slaughter) heard a knock at the door, that no one answered his call; that he got his gun, opened the door but saw no one there and that he was placing the gun behind the bed when it discharged. On cross-examination of Officer Mayo it was adduced that Slaughter informed him that he heard a knock at the door, asked who was there but that nobody answered; that he got his gun, went to the door and then he started fooling around with the gun; that his wife told him to put the gun up; and that he "was just fooling around with it and it went off and shot her."

Petitioner initially testified that on the night in question he and his wife had just retired to bed. He heard a knock at the front door but when he called out there was no reply. He went to the window, looked out and saw a friend who had been there earlier that evening. Slaughter related that just then he heard another knock at the door. When there was again no reply to his call, petitioner took the pump-action shotgun which he kept behind his bed and went to the door. He again asked who was there but there was no answer. He then decided to put the gun back, and, as he was doing so, it discharged blowing away the top part of his wife's head. Petitioner related that he then telephoned for the police. Upon investigation, the police found one expended shotgun shell in the weapon and one live shell lying on the floor close to decedent's body. On examination by the trial court, petitioner explained the presence of the live shell on the floor as being "pumped" there when he "first got the gun". When asked why he didn't pick it up, the following occurred:

"* * * Well, when I was going to pick it up, that is when the gun went off, I didn't get a chance to.

Q. Well, I thought you pumped the gun when you first got the gun.

A. I did, that is when I pumped it.

Q. And did the gun go off before you went to check the front door or after you came back?

A. That is when it went off, when I first got it and pumped it. I didn't get a chance to check—

Q. That was before you went to the front door?

A. That's right."

The State's Attorney then cross-examined him regarding his statements made at the coroner's inquest which were to the effect that petitioner heard a knock at the door; he called out to see who was there but no one answered; he got his gun and sat around to see if someone would attempt to break in; when there was no further disturbance his wife told him to put the gun away; and, as he was doing so, the gun went off.

In summarizing the various factors surrounding its judgment of guilty, the trial court completely ignored and did not mention the so-called "impeaching" statements of petitioner given at the coroner's inquest. The court looked to the fact that after the shooting, when questioned by the police, and on direct examination at trial, petitioner stated "that he got his gun, went to the door, and when he returned with the gun to the bedroom it went off accidentally." However, when questioned by the court about the live shell found on the floor, petitioner changed his testimony to the effect that the gun discharged while he was attempting to pick up the live shell and before he got to the front door.

We believe that the inquest testimony could have had no effect on the outcome of the trial, for, at most, it was merely a reiteration of the testimony elicited from the police officers on cross-examination by defense counsel. In fact, we find that most damaging to petitioner's assertions of an accidental shooting was the discrepancy in his statements immediately after the occurrence and at the trial.

It is next argued that at the time of his trial, petitioner was mentally incompetent and not able to assist in his de-

fense. In support of this contention, petitioner introduced into evidence the fact that on January 27, 1954, he was adjudged a schizophrenic and in need of mental treatment. He was committed to the Elgin State Hospital where he remained until July 17, 1957, when he was given an absolute discharge and considered restored. Further, petitioner's trial counsel testified at the hearing to the effect that he was not aware that Slaughter had been confined in a mental institution for treatment; that prior to trial he had difficulty in communicating with the petitioner and that this difficulty continued throughout the trial; and, that had he known of the prior adjudication of schizophrenia, his actions and advice during trial would have been different. Defense counsel also testified that petitioner "understood what he was charged with, but he didn't quite understand, in my judgment, why he was charged with it." No facts were brought before the trial court regarding petitioner's prior background, but implicit in his argument is the assertion that because of the different versions he gave of the facts surrounding his wife's death, a competency hearing should have been ordered. We cannot agree. The rule is that if "before or during the trial, facts are brought to the attention of the court, either by suggestion of counsel or the State, or by its own observation, which raises a *bona fide* doubt of the defendant's present sanity, a duty devolves upon the court to then cause a sanity hearing to be held as provided by law." (*People* v. *Burson,* 11 Ill.2d 360, 370; *McDowell* v. *People,* 33 Ill.2d 121.) The statement of trial counsel that petitioner could not co-operate with him does not, of itself, create such a *bona fide* doubt as to draw petitioner's competency into question. (See *People* v. *Foley,* 28 Ill.2d 426.) Further, the record explicitly indicates petitioner was discharged as "restored" and, from the record before us, we do not believe such facts have been shown as would indicate petitioner's incompetence to stand trial. See also *People* v. *Korycki,* 45 Ill.2d 87.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. Justice Ward took no part in the consideration or decision of this case.