THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LORENZO TURNER, Defendant-Appellant.

First District (5th Division)    No. 78-1323

Opinion filed July 20, 1979.

Kenneth N. Flaxman, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Mary Ellen Dienes, Assistant State's Attorneys, of counsel) for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In this appeal from an order dismissing his petition for post-conviction relief, defendant seeks only a certificate of importance so that the Illinois Supreme Court may consider whether the "farce or sham" standard currently employed in determining whether a criminal defendant has been adequately represented by retained counsel should be replaced with a standard requiring a higher quality of representation.

After a jury trial, defendant was convicted of aggravated kidnapping and intimidation, for which he was sentenced to concurrent terms of 75 to 225 years and 3 to 10 years, respectively. The facts adduced at trial are set forth at length in this court's opinion on direct appeal, wherein we affirmed the conviction. (*People v. Turner* (1976), 35 Ill. App. 3d 550, 342 N.E.2d 158.) In the interest of clarity, however, we shall provide a sketch of the essential evidence. It appears that Allen Bernstein, the victim, was last seen by his wife when she left for work on the morning of April 21, 1972, and upon her return that afternoon she found a telephone message taken by her daughter from her husband. The note instructed her to contact him at a cleaning plant which he had previously sold to defendant. She was unable to contact her husband, but that evening she received a telephone call from two males who said that they were holding her husband and that they wanted $100,000. The next morning, April 22, she received another telephone call from a male who was told she had raised $33,000. That afternoon, he called again and instructed her to go to a certain gas station at 8 p.m. with the money and to wait in a telephone booth. She complied, and at 8:15 p.m. she received a call there from a man who told her to leave the money next to an incinerator in a nearby alley and then return home, which she did. At her home she received a call from the same man, who told her to retrieve the money she had left in the alley and return with it to the gas station. She did so, and while there answered another telephone call at 10:45 p.m. from the same man, who told her to wait five minutes, drive around for an additional 20 minutes,

and then return to the booth. She followed those instructions and, upon her return, she again answered the phone at 11:20 p.m., receiving instructions to call a certain number—which she did immediately. The same man answered her call and said he would phone the next day with further instructions, but she received no such call.

Numerous Federal agents and Chicago police officers testified at the trial, and some who had followed Mrs. Bernstein during this period of time corroborated her testimony. Others related that they followed defendant during this same period and on the evening of April 22 they observed defendant making a telephone call from a booth located a few blocks from the booth where Mrs. Bernstein made her calls; that immediately afterward they saw him follow Mrs. Bernstein in his car after she had been told to drive around for 20 minutes; and that between 11:35 and 11:45 p.m., they saw defendant make a telephone call from a booth having a telephone with the same number that Mrs. Bernstein had been told to call. An employee of Illinois Bell Telephone Company who traced the last incoming call to the booth at the gas station where Mrs. Bernstein was contacted testified that the call originated from the booth where the police saw defendant making a call. There was also testimony by law enforcement officers that when Bernstein's automobile was located in a parking lot on April 22 they found blood of the same type and human hair identical to Bernstein's in the trunk as well as animal hair morphologically similar to that of the Bernstein family dog. Bernstein was never found.

On April 23, defendant was arrested and taken to a conference room where he was advised of his rights. Upon questioning he stated that the cleaning plant he purchased from Bernstein had been severely damaged by a fire some time ago; that his insurer refused to pay the claim; that he was unable to secure any loans for the business; and that for some reason Bernstein was responsible for all his misfortune. He was explaining how he and an individual known as "Big Man" perpetrated the kidnap scheme but, after his attorney called, the interrogation ceased and he was released on bail.

On April 25, defendant returned to police headquarters and advised that he wished to change the statement he had previously made. He stated that "Big Man" was not involved, but that a man known as "Mike" and two other men assisted him. He also explained that they had chosen a place near St. Anne, Illinois, where Bernstein was to be held.

At trial, however, defendant—the only defense witness—testified that he was not involved in Bernstein's disappearance; that while he had used the telephone booths as had been observed, he was merely making calls to his wife; that he had been driving around that night for innocuous reasons; that he had no financial or business problems; and that his prior confessions were untrue and were made only so he could leave the police

station quickly, inasmuch as the police had promised to release him on bond if he furnished a satisfactory statement.

On defendant's direct appeal, he was represented by a different attorney and, although numerous issues were raised, the competency of trial counsel was not questioned. His appellate counsel filed a petition for post-conviction relief, alleging various errors not relevant here, but later a substituted attorney filed an amended post-conviction petition which alleged that trial counsel failed to introduced evidence in the form of tax records and testimony from defendant's wife which would have established that he had no financial motive to kidnap because his business was improving; that trial counsel failed to call as witnesses several persons who would have testified to defendant's reputation as a person of good character; that trial counsel failed to call others who would have testified that defendant, as he had testified at trial, was engaged in lawful activity on the night of the kidnapping; that trial counsel failed to obtain and introduce an expert opinion, based on "voice prints," as to whether the voice heard on a recording (which was not in evidence) of the ransom demand received by Mrs. Bernstein over the telephone was that of defendant; and that, therefore, trial counsel's conduct "did not measure up to the standards required of attorneys in criminal cases." From the denial of his petition this appeal has been taken.

Opinion

In his brief and argument before this court, defendant concedes that the alleged incompetency of his retained trial counsel, as set forth in his petition, was not of such magnitude as to reduce the court proceeding to a farce or sham and that therefore, under existing standards, we must affirm the dismissal of the petition. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142.) He argues, however, that a different standard requiring a higher quality of representation should be employed and, while admitting that this court should not rule contrary to the line of supreme court cases adhering to the present standard, he urges that the question of whether a new standard should be adopted is of such importance that it should be decided by the Illinois Supreme Court and that we should issue a certificate of importance pursuant to Supreme Court Rule 316. Ill. Rev. Stat. 1977, ch. 110A, par. 316.

■■ ■ We will first consider the State's contention that defendant has waived any argument as to competency of trial counsel, because the issue was not raised in his prior direct appeal. It is an established rule that where a defendant takes a direct appeal from his conviction, the judgment of the reviewing court is *res judicata* as to all issues decided and as to those which the record discloses could have been raised but were

not. (*People v. Adams* (1972), 52 Ill. 2d 224, 287 N.E.2d 695; *People v. Carlton* (1975), 31 Ill. App. 3d 313, 333 N.E.2d 596.) However, when allegations in a post-conviction petition of trial counsel incompetence are based on facts not appearing in the record, they are not barred by *res judicata*. (*People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83; *People v. Dennis* (1973), 14 Ill. App. 3d 493, 302 N.E.2d 651.) In the case at bar, the incompetence of trial counsel is based on his alleged failure to call certain witnesses and to introduce certain evidence, all of which involve matters apart from the trial record, and thus it may not be said that they should have been presented in the direct appeal. (*People ex rel. Coats v. Sain* (1962), 24 Ill. 2d 248, 181 N.E.2d 179; *In re Application of County Collector of Cook County* (1974), 23 Ill. App. 3d 923, 320 N.E.2d 456.) Accordingly, we hold there was no waiver and that defendant was not barred from asserting them in the instant petition.

Although we find no actual waiver, it is significant that defendant in his brief "acknowledges that the decision below must be affirmed." Thus, because the existence of an actual controversy is an essential requisite to appellate jurisdiction (*Slaughter v. Thornton* (1975), 34 Ill. App. 3d 422, 339 N.E.2d 776; *Buckingham Corp. v. Vesolowski* (1974), 17 Ill. App. 3d 58, 307 N.E.2d 703), and since none has been presented here, we have no choice but to dismiss the appeal.

■■ Turning next to the question of whether, as defendant urges, we should issue a certificate of importance, we initially note as a matter of procedure that an appellant may not seek certification of a case before it has been decided by this court. Rule 316, which governs this situation, provides in relevant part:

> "Appeals from the Appellate Court shall lie to the Supreme Court upon the certification by a division of the Appellate Court that a case decided by it involves a question of such importance that it should be decided by the Supreme Court. Application for a certificate of importance may be included in a petition for rehearing or may be made by filing four copies of a petition (which may be typewritten), clearly setting forth the grounds relied upon, with the clerk of the Appellate Court within 35 days after the entry of the judgment appealed from if no petition for rehearing is filed, or, if a petition for rehearing is filed, within 14 days after the denial of the petition or the entry of the judgment on rehearing." (Ill. Rev. Stat. 1977, ch. 110A, par. 316.)

It appears clear that Rule 316 contemplates certification should be sought after this court renders an opinion on the merits adverse to the petitioner, and should be requested either in a petition for rehearing or in a separate petition—but not in the initial appellate brief, as defendant did here.

■■ ■ Having noted this procedural irregularity, we will nevertheless determine whether defendant is entitled to a certificate. We think not. As noted above, Rule 316 allows for certification of a case "decided by" this court, and inasmuch as we have dismissed defendant's appeal for lack of an actual controversy, we have not actually "decided"the case and, in view thereof, no basis for issuance of a certificate is indicated. Moreover, we believe that, on the merits, defendant has failed to set forth sufficient "grounds" to warrant certification. He did not argue the adoption of a new standard before this court, but indicated in his brief and during oral argument in this court that he would urge in the supreme court the adoption of a standard that would require retained counsel to conduct a defense "within the range of competence demanded of attorneys in criminal cases." As defendant explained in his brief, this or a similar requirement has been adopted in place of the "farce or sham" standard in some State and Federal jurisdictions. (See, *e.g.*, *United States ex rel. Williams v. Twomey* (7th Cir. 1975), 510 F.2d 634; *Moore v. United States* (3d Cir. 1970), 432 F.2d 730; *State v. Harper* (1973), 57 Wis. 2d 543, 205 N.W.2d 1.) However, as the State points out, defendant has made no contention or showing of a violation of such standard in the instant case. Thus, we have before us only the question of whether a new standard should be adopted, without the benefit of any argument as to whether the standard could or should be applied here. This presents, at best, not only an abstract question which a reviewing court will decline to consider (*People v. McCullum* (1977), 66 Ill. 2d 306, 362 N.E.2d 307; *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 121 N.E.2d 486), but also provides us an insufficient basis upon which to determine whether a certificate should be issued.

Further, even applying this standard of representation proposed here, the record does not support a finding of incompetence of counsel. We note that during the course of an eight-day jury trial, defendant's trial attorney vigorously argued and presented testimony in support of a motion to suppress defendant's arrest; conducted competent cross-examinations of 20 State's witnesses during which he demonstrated an intimate knowledge of the details of the case; argued a motion to suppress the testimony of the Illinois Bell Telephone employee who traced one of defendant's telephone calls; moved and argued for a directed verdict at the close of the State's case; delivered what appears to be a commendable closing argument; moved and argued for a new trial after the jury returned a verdict of guilty; and competently argued in defendant's behalf during the aggravation and mitigation hearing. In view of trial counsel's competent defense and the presence of "massive evidence of guilt" (*People v. Turner* (1976), 35 Ill. App. 3d 550, 364, 342 N.E.2d 158, 168), it is reasonable to believe that the failure to introduce the evidence

set forth in the petition was a tactical decision based upon his professional judgment. We therefore conclude that trial counsel's representation was well "within the range of competence demanded of attorneys in criminal cases" and we find that, even if defendant's proposed standard were adopted, it was not violated.

Finally, we note that in the recent case of *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677, our supreme court was afforded the opportunity to adopt a new standard for assessing the competency of retained counsel, but declined to do so and reaffirmed the "farce or a sham" standard. (72 Ill. 2d 421, 437, 381 N.Ed 677, 686.) Under the circumstances, we believe it would be pointless to certify the instant case to reconsider the same question which was before the supreme court less than one year ago.

In the light of the foregoing, defendant's appeal is dismissed, and his request for a certificate of importance is denied.

Appeal dismissed.

Certificate of importance denied.

LORENZ and WILSON, JJ., concur.