THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KURT DEMING, Defendant-Appellant.

Fifth District    No. 79-283

Opinion filed August 15, 1980.

William A. Cain, of North Miami Beach, Florida, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (William S. Zale and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Kurt Deming, entered a negotiated plea of guilty in the Circuit Court of Madison County to the offense of murder and was sentenced to a term of imprisonment of not less than 14 nor more than 25 years. In attempting to vacate his plea, defendant petitioned for relief under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1977, ch. 38, par. 122—1 *et seq.*) Defendant's original petition was dismissed on motion of the State, and he filed an amended petition. The State's motion to dismiss the amended petition was denied, whereupon the trial court immediately conducted an evidentiary hearing on the amended petition.

Defendant's amended petition was denied by the trial court, and he appeals raising the following issues: whether defendant was denied effective assistance of counsel at all times relevant to entering his plea; and whether defendant's decision to plead guilty was procured by a material misrepresentation on the part of the State concerning early parole. As a preface to these issues, defendant asserts that the State has judicially admitted the allegations contained in the amended petition due to its failure to file an answer to the amended petition.

Defendant and Roger Spain were jointly indicted for the January 16, 1971, murder of William Slepawick, who was fatally wounded by a shotgun blast to the head. At defendant's trial the State sought the death penalty, but after two days of jury selection, defendant entered a negotiated plea of guilty. The murder charge against Spain was subsequently dismissed.

In his amended petition for post-conviction relief, defendant alleges

that in July [*sic*] 1971, he pleaded guilty to the murder of William Slepawick; that said plea was predicated upon defendant's knowledge of the existence of a confession which was coerced and made before defendant was adequately informed of his *Miranda* rights; that at the time of said plea the State's Attorney knew, or should have known, that defendant had six alibi witnesses, which the State's Attorney should have made known to the court before defendant's plea was accepted, since it tended to establish the innocence of the defendant and would have put the court on inquiry as to the voluntariness of the plea of guilty or the truth of same; that the combination of the coerced confession and disregard of defendant's defense so overcame the volition of defendant that he pleaded guilty to a crime he did not commit, all in violation of his constitutional right to remain silent, to be confronted by his accusers, to due process and to a fair and impartial trial by a jury of his peers; and that defendant was sentenced to 14 to 25 years and is presently serving that sentence in Menard Penitentiary, Chester, Illinois. Defendant's amended petition further alleges that "the Court file in this cause shows that an appearance was filed on behalf of Roger Spain, Co-Defendant, by attorneys, Charles M. Shaw, Robert L. Officer and Ralph L. Markus of 225 South Meramec, Clayton, Missouri. However, when the purported plea of guilty was entered by Defendant, Kurt Deming, on June 29, 1971 the file reflects that he was represented by attorneys, Joseph Hill and Terry Flannigan"; that "the parents of Kurt Deming hired attorneys, Shaw, Officer and Markus, to represent the Petitioner. That they neither withdrew nor advised the Petitioner, nor his parents, that they were representing Spain who was to be a witness against Kurt Deming"; that neither defendant nor anyone in his behalf retained Joseph Hill or Terry Flannigan, who pleaded defendant guilty; and that "while he was in custody and without representation of the lawyers hired by his parents to induce him to plead guilty, assistant State's Attorney Robert Trone promised Kurt Deming that if he pleaded guilty on June 29, 1971 and had no marks against him in the penitentiary which would affect his record of good behavior that he would be released on parole the first time he came up for consideration. In reliance thereon and in the absence of his duly paid attorneys, Kurt Deming thereupon pleaded guilty. That he came up for parole on February 7, 1978 and even though he had a record of good behavior, he was not released as promised."

In his prayer for relief, defendant requested that his guilty plea be vacated and that he receive a new trial.

The State moved to dismiss the amended petition. A hearing on the motion to dismiss was held on March 28, 1979, and after denying the motion from the bench, the trial court conducted an evidentiary hearing on the merits of the amended petition.

Defendant's mother, Mary Jane Deming, testified that she and her husband retained Charles M. Shaw of the law firm of Shaw, Officer and Markus to represent defendant on the murder charge and that Shaw was paid a retainer of $3,000. Mrs. Deming stated that subsequent to defendant's guilty plea she was informed by her husband, now deceased, and a daughter, Pamela Marlene Ridenhour, that Shaw's firm also represented Roger Spain in the same matter. Mrs. Ridenhour related that a conversation involving defendant, his father, and Robert Trone, an assistant State's Attorney, took place in her presence and precipitated the guilty plea. In this conversation Trone informed defendant of the possible consequences of a negotiated plea of guilty. She stated that, in exchange for a plea of guilty to murder, Trone offered to recommend that defendant be sentenced to a term of imprisonment of not less than 14 nor more than 25 years and that, in addition, Trone promised defendant that he would be eligible for parole within seven or eight years. She recalled that Trone assessed defendant's chances of making early parole by stating that due to his young age, and provided that he serve his prison time without incident, he would be paroled the first year he was eligible. According to Mrs. Ridenhour, defendant decided to plead guilty immediately after this conversation.

Defendant testified that his decision to plead guilty was a direct result of Trone's promise that he would be paroled the first year he was eligible. He also stated that he did not retain Joseph Hill to represent him. He initially met with Hill on the day he pleaded, but he indicated that Hill may have been present in the courtroom during the two days of jury selection. On cross-examination he conceded that at the time he entered his plea he did not make it known to the court that he was dissatisfied in any way with his trial counsel.

Trone testified that he conducted plea negotiations with "Joe Hill," although he could not "place his face," and that there "was somebody else with him from a law firm in St. Louis." When asked whether he promised defendant early parole in exchange for a guilty plea, he responded:

> "I could not have made him that promise and did not make him that promise because it would be beyond my power. Which his attorneys were present and were well aware—."

Joseph Hill testified that he was asked to represent defendant in the capacity of local counsel because the attorney who was representing defendant at the trial was not licensed to practice law in Illinois. Hill's recollection of the plea negotiation was sketchy; and although he was unable to recall the name of the attorney he was assisting, the record

indicates that it was Terry J. Flannigan. Thus, the record reflects that Flannigan was not licensed to practice law in Illinois.

After taking the matter under advisement, the trial court entered an order denying the amended petition, and defendant perfected this appeal.

Defendant contends that the State's failure to file an answer to the amended petition constituted a judicial admission of the factual allegations presented in such petition. This contention is based on the premise that petitions for post-conviction relief are civil in nature and, as such, are subject to the provisions of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 1 *et seq.*). Defendant argues that section 1 of the Civil Practice Act states that all civil proceedings, except those specifically exempted, are subject to the provisions of the Act. Since section 1 does not explicitly exempt post-conviction proceedings, defendant reasons that such proceedings must fall within the scope of the Act.

■■ Under this rationale, section 40(2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 40(2)) would apply to the instant case. This section provides:

> "(2) Every allegation, except allegations of damages, not explicitly denied is admitted, unless the party states in his pleading that he has no knowledge thereof sufficient to form a belief, and attaches an affidavit of the truth of the statement of want of knowledge, or unless the party has had no opportunity to deny."

The Post-Conviction Hearing Act requires that the State file an answer to a post-conviction petition within 20 days of the denial of a motion to dismiss the petition. (Ill. Rev. Stat. 1977, ch. 38, par. 122—5.) Defendant concludes that the absence of the required answer by the State rendered the allegations in the amended petition judicially admitted by virtue of section 40(2) of the Civil Practice Act.

■ Thus, defendant's contention regarding the judicial admission of the allegations contained in the amended complaint is predicated upon the applicability of the Civil Practice Act to petitions filed under the Post-Conviction Hearing Act. In ruling that the Civil Practice Act is not controlling with respect to such petitions, our supreme court in *People v. Clements* (1967), 38 Ill. 2d 213, 230 N.E.2d 185, had occasion to consider such a contention. The court there stated:

> "While we agree that the post-conviction proceeding is civil in nature (*People v. Alden*, 15 Ill. 2d 498), petitioner is mistaken as to the applicability of the Civil Practice Act to those proceedings. The Post-Conviction Hearing Act is *sui generis* and '* * * it is not

the intent of the act that these claims [constitutional claims made in the petition] be adjudicated on the pleadings. The function of the pleadings in a proceeding under the act is to determine whether the petitioner is entitled to a hearing.' (*People v. Airmers*, 34 Ill. 2d 222, 226.)" (*People v. Clements* (1967), 38 Ill. 2d 213, 215-16, 230 N.E.2d 185, 187.)

Thus, the State's failure to file an answer as required by section 122—5 of the Post-Conviction Hearing Act did not constitute a judicial admission of the allegations contained in defendant's amended petition.

In his first issue defendant contends that he was denied his right to effective assistance of counsel at all times relative to his plea of guilty. He complains that the counsel he originally retained was not an attorney licensed to practice law in Illinois and that such counsel labored under a conflict of interest by representing codefendant, Roger Spain.

With respect to his first complaint, defendant asserts that attorneys Charles M. Shaw, Robert L. Officer, Ralph L. Markus and Terry Flannigan were members of a Missouri law firm retained by defendant's parents to represent him. Moreover, defendant contends they were unqualified to represent him because they were not licensed to practice in Illinois. In support of this issue, defendant places great emphasis upon the testimony of Joseph Hill, who was retained as local counsel in Illinois by Shaw's firm. Of particular significance in Hill's testimony is the following colloquy:

"ASSISTANT STATE'S ATTORNEY: And do you know if at that time that Charles Shaw was a member of the Illinois Bar?

A. My recollection was that he was not.

Q. And how about a gentleman named Robert L. Officer?

A. That name doesn't strike me. There was an attorney representing Mr. Spain my recollection was and that fellow was from Missouri. Whether he was licensed in Illinois or not I don't recall.

Q. Ralph Markus? Does that name ring a bell as far as an Illinois License?

A. I don't know whether he is or not. He's not from this area. He must be from Missouri. I don't know if he has an Illinois license or not."

Defendant notes that these attorneys did not seek leave to appear on his behalf in Illinois pursuant to Supreme Court Rule 707 (Ill. Rev. Stat. 1977, ch. 110A, par. 707), and he concludes that his representation by foreign attorneys acting without leave of court denied him his right to effective assistance of counsel and constitutes reversible error. We disagree.

It is not necessary for us to consider the validity of defendant's assignment of reversible error in this regard for the reason that the record does not support his allegation that he was represented exclusively by foreign attorneys. It is well settled that the burden of proof in a post-conviction hearing rests with defendant. *People v. Bracey* (1972), 51 Ill. 2d 514, 283 N.E.2d 685.

■■ The record indicates that the Clayton, Missouri, law firm of Shaw and Howlett represented the defendant throughout the entire proceedings prior to the filing of the instant post-conviction petition and that Robert L. Officer and Terry L. Flannigan were associated with that firm. The record is silent as to the status of Howlett and Officer. Without proof, we cannot accept defendant's claim that they were not attorneys licensed to practice law in Illinois. Ordinarily, it is very difficult to prove a negative. However, the negative defendant sought to establish in this case, that Howlett and Officer were not Illinois attorneys, could have been conclusively proven by reference to the official roll of attorneys licensed to practice law in Illinois in the year in question maintained by the Attorney Registration and Disciplinary Commission. No such evidence was offered at trial; therefore, we conclude that defendant failed to establish that Howlett and Officer were foreign attorneys.

What the record does disclose is that defendant was capably represented by Officer, as an associate of the firm of Shaw and Howlett, during preliminary proceedings, and by Hill, an Illinois attorney, during the negotiations resulting in the plea of guilty. A strict test is applied in determining whether privately retained counsel is incompetent. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) " 'In such a case the court will not reverse a conviction because of the incompetency of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham.' *People v. Torres* (1973), 54 Ill. 2d 384, 391. See also, *e.g.*, *People v. Redmond* (1972), 50 Ill. 2d 313, 315; *People v. Washington* (1968), 41 Ill. 2d 16, 22." (*People v. Murphy*, 72 Ill. 2d 421, 436, 381 N.E.2d 677, 685.) The performance of Officer and Hill in representing defendant never approached the level of incompetency necessary to prove inadequate representation as set out in *Murphy*.

Further, we find no merit to defendant's contention that the law firm representing him also represented codefendant, Roger Spain. Defendant urges that this allegation is established by the testimony of defendant's mother in which she stated that she retained the law firm of Shaw, Officer and Markus to defend her son. Markus was Roger Spain's attorney of record on the murder charge. Defendant states in his brief on appeal that

this evidence is unrefuted. However, an examination of the common law record, which defense counsel requested that the trial court judicially notice, does not indicate that Markus was associated with Shaw's firm. Contrary to the testimony of defendant's mother, the record establishes that the motions filed on behalf of defendant designate the law firm of Shaw & Howlett as defendant's counsel from the outset. The firm's address is listed as 225 South Meramec Avenue, Clayton, Missouri, and the telephone number is PA-5-9700. Markus filed pleadings in his own name on behalf of Roger Spain. His address as listed on the pleadings is 226 Meramec Avenue, Clayton, Missouri, and his telephone number is VO-2-6633. Since the address and telephone number of the attorney of record for Roger Spain are different from those of the law firm of Shaw & Howlett, attorneys of record for defendant, the trial court was justified in concluding that Roger Spain was not represented by defendant's counsel. Further, there is no evidence in the record other than the testimony of defendant's mother that a law firm designated as Shaw, Officer and Markus did, in fact, exist. Accordingly, we hold that defendant has failed to demonstrate that the representation afforded him was ineffective due to conflicting loyalties on the part of his counsel.

Defendant contends in his second issue that he was induced to plead guilty by the State's Attorney's promise that he would receive early parole. Both defendant and his sister, Pamela Ridenhour, testified that such a promise was made by Robert Trone, the assistant State's Attorney. On the basis of this evidence, which defendant claims is uncontradicted, he asserts that the trial court erred in denying the relief sought in the amended petition.

■■ In court proceedings to determine facts without a jury, whether to believe given testimony wholly, partially, or not at all, is for the trial judge who hears and sees the witnesses. (*People v. Logue* (1970), 45 Ill. 2d 170, 258 N.E.2d 323.) Unless his determination can be shown to have been manifestly erroneous, it will not be disturbed on review. *People v. Rose* (1971), 48 Ill. 2d 300, 268 N.E.2d 700.

In the case at bar, the trial court's rejection of defendant's contention was supported by the direct testimony of Trone, in which he categorically denied making any promise of early parole to defendant in exchange for a plea. This testimony, not mentioned in defendant's brief, would have been sufficient to refute the defense evidence that such a promise was made. The question before the trial court was one of credibility. We cannot say that the trial judge's decision to believe Trone is manifestly erroneous, since the trial judge heard and saw the witnesses firsthand and was in a better position to judge their credibility. Accordingly, we

conclude that the trial court's decision rejecting defendant's contention was not manifestly erroneous. Therefore, its judgment must be affirmed.

For the reasons stated above, we affirm the order of the trial court denying defendant's amended post-conviction petition.

Affirmed.

HARRISON and SPOMER, JJ., concur.