THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES RILEY, Defendant-Appellant.

First District (2nd Division)    No. 79-1464

Opinion filed September 30, 1980.—Supplemental opinion filed on denial of rehearing September 30, 1980.

James J. Doherty, Public Defender, of Chicago (Timothy K. McMorrow and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Michael K. Demetrio, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Following a bench trial, defendant Charles Riley was found guilty of armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2), aggravated kidnapping, and unlawful restraint (Ill. Rev. Stat. 1975, ch. 38, pars. 10—2(a)(3) and 10—3(a)).[1] Psychiatric examinations performed subsequent to trial revealed that defendant was unfit for sentencing and in need of treatment. The court entered a finding to that effect and defendant was hospitalized. After a restoration hearing on March 26, 1979, which resulted in a finding that defendant was fit to be sentenced, he was sentenced to a term of 4 years to 4 years and one day for the armed robbery conviction. Defendant appeals contending that his conviction was obtained in violation of his constitutional right to due process since a *bona fide* doubt of his fitness to stand trial was raised by the determination that he was unfit for sentencing.

The charges against defendant stemmed from an incident that occurred on November 7, 1977. The complaining witness testified that he and a companion were sitting in a car outside of a tavern at 3:30 a.m., when defendant and two other men approached the car, struck a gun at his head, and told him to move over. The three assailants entered the car and drove off with defendant at the wheel. During the course of the next two hours, the three men alternated driving and kept a gun pointed at the head of the witness; they also took $20 from his pocket. At one point the complainant was told to get out of the car and into the trunk, but he used this opportunity to run away and hide under a porch until daylight when he reported the incident to the police. The witness identified defendant in a photographic lineup and later at an actual lineup.

Defendant was arrested in his home, advised of his *Miranda* rights and taken to police headquarters where he was identified by the complaining witness. He admitted participating in the robbery, but stated that another of his companions had the gun and had also taken the car. The car and the gun were later found in the possession of the individual named by defendant.

Prior to trial, the court ordered a psychiatric examination of defendant to determine his fitness to stand trial. In a report dated April 21, 1978, the examining physician of the Psychiatric Institute of the circuit court

---

[1] On August 12, 1980, we entered an order under Supreme Court Rule 23 (Ill. Rev. Stat. 1977, ch. 110A, par. 23), affirming the judgment of the Circuit Court of Cook County. Defendant filed a petition for rehearing raising a question which we believe is best disposed of by an opinion. Accordingly, we have this date entered an order vacating the August 12, 1980, order and affirm the judgment by this opinion and supplemental opinion upon denial of the petition for rehearing.

determined that defendant was mentally fit for trial and that in his opinion he was sane at the time of the offense. The trial commenced August 8, 1978. On that date defendant waived his right to a jury trial following a colloquy with the trial judge concerning defendant's understanding of the process. Defendant indicated that he had discussed the matter with his attorney and preferred a bench trial.

On the last day of the trial (August 21, 1978) defendant testified in his own behalf, and denied participating in the armed robbery. He stated that he was offered a ride home from one of his companions and did not see a gun in the car, nor anyone pointing a gun at the witness or taking money from him. When questioned about the report that he had previously given to the police, he stated that he was on medication at the time and was "supposed to be a registered patient at Morgan Park Mental Health Center." The court found him guilty on all three counts and ordered a presentence investigation with a determination of defendant's fitness for sentencing.

A hearing on the matter was held on October 23, 1979, and by way of stipulation it was determined that an examination of defendant conducted nine days after his trial, revealed that the examining psychiatrist was not certain whether or not defendant was competent for sentencing. It appeared to the psychiatrist that defendant was acutely disturbed and psychotic on that date, but there was a possibility that he was malingering. The doctor indicated that defendant should be sent to the Illinois State Psychiatric Institute for a period of observation. It was further stipulated that defendant was evaluated in the Forensic Psychiatric Program of the Illinois Department of Mental Health, where it was determined that defendant was suffering from schizophrenia, chronic undifferentiated, and was therefore unfit for sentencing and in need of further treatment. An order was entered *nunc pro tunc* to September 15, 1978, that defendant was not fit to be sentenced, and defendant was hospitalized for treatment.

■■ A hearing on his fitness commenced on March 26, 1979, at which the parties stipulated to the medical evidence. Examinations of defendant conducted by two psychiatrists indicated that defendant was fit for sentencing. The court restored the case and sentenced defendant on the armed robbery conviction. Defendant claims that the psychiatric examination, performed nine days after his trial, showing him unfit for sentencing, raises a *bona fide* doubt as to his fitness at the time of trial.

The law in this area is well established. A person who lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial. (*Drope v. Missouri* (1975), 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896.) In Illinois a person is unfit to stand trial or be

sentenced if he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(a).) We bear in mind that fitness speaks only to a person's ability to function within the context of the trial and does not refer to his sanity or competence in other areas. (See *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Thus, a defendant can be fit for trial, although his mind may be otherwise unsound (*Withers v. People* (1961), 23 Ill. 2d 131, 177 N.E.2d 203), though he may suffer from some mental disturbance or require psychiatric treatment (*People v. Davis* (1978), 65 Ill. App. 3d 580, 382 N.E.2d 594), or uses prescribed medication to maintain his fitness (*People v. Dalfonso* (1974), 24 Ill. App. 3d 748, 321 N.E.2d 379). The question of fitness may be raised by the State, the defendant or the court, and, when a *bona fide* doubt is raised, the court has the duty to make a determination of that question before further proceedings. (Ill. Rev. Stat. 1973, ch. 38, pars. 1005—2—1(b) and (c).) The determination of whether there is a *bona fide* doubt of fitness for trial depends on the facts of each case, and the decision rests largely within the discretion of the trial court. (*People v. Murphy.*) In resolving this issue we bear in mind that the trial court, unlike the reviewing court, was in a position to observe the defendant and evaluate his conduct. *People v. Dudley* (1970), 46 Ill. 2d 305, 263 N.E.2d 1.

■■ Applying these principles to the case at bar, we find no indication of defendant's unfitness to stand trial. The record shows that the trial court ordered a determination of fitness prior to the time of trial, and the examination affirmed defendant's fitness for trial and sanity at the time of the occurrence. Though the trial commenced three months later, there is no evidence in the record to demonstrate that defendant did not meet the requirements of fitness to stand trial. He engaged in a colloquy with the trial judge in which he manifested his preference for a bench trial and indicated that he had discussed the matter with his attorney and knew the nature of a jury trial. He also testified in his own behalf and appeared to answer the questions of his counsel and those of the State coherently and directly. Moreover, there was no request from his attorney for another examination to determine fitness or indication that defendant was unable to cooperate with him in presenting a defense or that he did not understand the nature of the proceedings. See *People v. Walker* (1979), 77 Ill. App. 3d 227, 395 N.E.2d 1087.

■■ Defendant contends that a *bona fide* doubt of fitness is raised solely by the presentence examination conducted nine days after the trial which found him unfit for sentencing. In support of his contention he cites *People v. Owens* (1978), 57 Ill. App. 3d 157, 372 N.E.2d 857, in which petitioner was granted section 72 relief to vacate his conviction and sentence where it was determined 3½ months after trial that the petitioner

suffered from organic brain damage and mental illness which stemmed from an injury which occurred six years earlier. The court concluded that the facts alleged in the petition and the fair inferences arising from them would have raised a *bona fide* doubt as to petitioner's fitness to stand trial if these facts had been presented to the trial court. (57 Ill. App. 3d 157, 161.) By analogy defendant points out that it was determined that he was suffering from an acute exacerbation of his illness, schizophrenia, chronic undifferentiated, nine days after trial, and that a fair inference is that there is a *bona fide* doubt as to his fitness to stand trial on the date of trial. We disagree. In the instant case there is no indication of organic brain damage or illness which would raise a doubt as to defendant's ability to stand trial, nor any indication in the record that the trial court should have stopped the proceedings in order to make another determination. While there is close proximity between the date of trial and the psychiatric examination which questioned defendant's fitness for sentencing, a review of the proceedings during trial does not support defendant's contention that a *bona fide* doubt of his fitness to stand trial is raised. That defendant may have been suffering from a mental disturbance does not automatically raise a doubt as to his fitness to stand trial, and it is possible that such a condition could have been aggravated after trial rendering him unfit for sentencing until his condition was brought under control. Yet, in the instant case, the record does not indicate that defendant was suffering from a mental disturbance rendering him unfit for trial.

We therefore conclude that defendant was not denied his right to due process since there is nothing in the record to support an inference that defendant was incompetent to stand trial, and there was no abuse of discretion on the part of the trial court in this regard.

■■ ■ We note that in addition to being convicted of armed robbery, defendant was also convicted of aggravated kidnapping and unlawful restraint. While separate judgments of conviction may be entered where more than one offense arises from a series of incidental or closely-related acts, separate judgments of conviction may not be entered for lesser-included offenses. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) Since it appears that the elements of unlawful restraint are necessarily present in aggravated kidnapping, defendant's conviction for unlawful restraint must be vacated. We note further that no sentence was imposed for the conviction of aggravated kidnapping. We therefore remand the cause to the circuit court for entry of a separate sentence for that conviction in order to make the judgment complete. *People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540.

The judgment of the circuit court of Cook County for armed robbery is affirmed. The conviction for aggravated kidnapping is affirmed, and

the cause remanded to impose sentence on that offense. The conviction for unlawful restraint is vacated.

Affirmed and remanded.

PERLIN, P. J., and STAMOS, J., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
Mr. JUSTICE DOWNING delivered the opinion of the court:

In an order filed under Supreme Court Rule 23 this court affirmed defendant's conviction for armed robbery.[2] (*People v. Riley*, First District No. 79-1464, filed August 12, 1980.) The order *sua sponte* noted that the trial court had convicted defendant of both aggravated kidnapping and the lesser-included offense of unlawful restraint but had failed to sentence defendant on the conviction of aggravated kidnapping. We remanded the cause to the circuit court with directions to vacate the conviction for unlawful restraint and to impose sentence on the aggravated kidnapping conviction. Defendant has filed a petition for rehearing contending that this court lacked jurisdiction to remand for sentencing because he had not appealed that conviction. He further contends that *People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540, cited by this court in its ruling, is not authority for the court's action concerning the issue of imposing the additional sentence.

In support of his argument defendant cites *People v. Gum* (1980), 85 Ill. App. 3d 298, 407 N.E.2d 806, *appeal denied* (1980), 81 Ill. 2d 595, a recent Fourth District decision. There the appellate court held that a reviewing court does not have jurisdiction to remand a cause to impose sentence on a conviction for which no sentence was originally imposed, where the defendant has not appealed that conviction. Thus, in *Gum* the court decided that it was without authority to take any action with regard to the two convictions that were not included in the notice of appeal, stating: "[E]xcept when the defendant appeals the conviction that lacks a sentence—the question *Scott* specifically decided—the reviewing court lacks jurisdiction over that matter." 85 Ill. App. 3d 298, 302.

In *Gum* the court rejected the position taken earlier by the Fifth District Appellate Court in *People v. Dean* (1978), 61 Ill. App. 3d 612, 378 N.E.2d 248, *appeal denied* (1978), 71 Ill. 2d 610. In *Dean* the court denied an attempt by defendant to distinguish *Scott* on the basis that defendant did not seek relief from the conviction upon which no sentence had been imposed, and it further stated that the "thrust" of *Scott* is that a remanding

---

[2] See footnote 1, page 439.

order is appropriate whenever the reviewing court acts to affirm the incomplete judgment of conviction of the trial court. The court reasoned that, if a trial court lacks authority to impose a sentence less than the statutory minimum on a judgment of conviction, then it follows that it lacks authority to impose any sentence on a properly entered judgment of conviction.

> "Hence, where the judgment of the reviewing court is an affirmance of a trial court's judgment of conviction, but that judgment remains incomplete because no sentence had been entered thereon, the reviewing court must order a judgment to be made final by the imposition of sentence." 61 Ill. App. 3d 612, 619-20.

We find the reasoning of *Dean* more persuasive than *Gum*, and agree that it was not the intention of the supreme court in *Scott* to limit the powers of the appellate court by allowing a defendant to prevent a reviewing court from acting to finalize a judgment by carefully avoiding any issue involving an incomplete conviction. See *People v. Walsh* (1980), 80 Ill. App. 3d 754, 769-70, 400 N.E.2d 587, *appeal denied* (1980), 81 Ill. 2d 587.

Further, we believe that such an interpretation would be inconsistent with the decision in *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, upon which *Scott* was predicated.

In *Lilly*, the court acknowledged that the final judgment in a criminal case is a sentence and that in the absence of the imposition of sentence an appeal cannot be entertained. However, it held that the case was properly before the court with regard to defendant's conviction for rape, and under Supreme Court Rule 366 it had authority to vacate an incomplete judgment entered on a verdict for indecent liberties. In *Scott* the supreme court cited the powers of reviewing courts in both civil (Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)) and criminal (Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)) appeals, and noted that although Rule 366 was not specifically made applicable to criminal appeals (Ill. Rev. Stat. 1977, ch. 110A, par. 612), the court had ruled in *Lilly* that it had authority under Rule 366 to vacate an incomplete judgment. Following *Lilly*, it concluded that the appellate court acted within the scope of its power in remanding the cause for entry of judgment, the effect of which was to complete the circuit court's order and render the judgment final.

We find no basis in *Scott* to support the distinction urged upon this court by the defendant. Accordingly, the petition for rehearing is denied.

Petition for rehearing denied.

PERLIN, P. J., and STAMOS, J., concur.