THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LAMAR GARNER, Defendant-Appellant.

First District (2nd Division)    No. 80-2689

Opinion filed December 22, 1981.

Steven Clark, of Chicago (Gordon H. Berry, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean C. Morask, and Gregory G. Thiess, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DOWNING delivered the opinion of the court:

Following a bench trial defendant was convicted of murder and armed violence based thereon (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1 and 33A—2). He was sentenced to a term of 25 years' incarceration for murder. On appeal defendant contends that he was not proved guilty beyond a reasonable doubt because the State's witnesses were demonstrably evasive in their testimony. The State requests that defendant's conviction for armed violence, which was vacated, be reinstated and the cause remanded for imposition of sentence.

The State's witnesses consisted of deceased's son Clarence Cox, and two women who witnessed the shooting from the front window of a second-floor apartment in the building where deceased lived. Clarence Cox had gone to visit his father at his apartment on September 12, 1979. About 10 p.m. they went to a liquor store, bought a quart of beer and cigarettes and returned to deceased's building where they sat on the front steps. The beer was in a bag on the steps. At this point defendant, who lived a short distance away, approached the front gate of the deceased's building. Defendant told deceased that he did not like deceased's slapping a woman, and defendant entered the gate. An argument be-

tween the men ensued during which time deceased called defendant an uncomplimentary name and told defendant that he could not enter the gate. Defendant then pulled a pistol and repeatedly shot the unarmed deceased.

The police arrived and found deceased at his building. When police proceeded to deceased's apartment, they found a fully loaded .38-caliber revolver by the stairs. Defendant was arrested, and a .22-caliber 9-shot revolver with eight expended shells in it was recovered from defendant. Additional ammunition for both weapons was also seized.

Defendant and his wife testified in order to establish that his actions were justified. In substance their testimony showed that on the day of the shooting deceased wanted to sell defendant the .38-caliber handgun previously mentioned. An argument ensued between defendant and deceased, and defendant's wife was struck by deceased. Defendant then returned the loaded .38-caliber handgun to deceased.

At approximately 10 p.m. on September 12, 1979, the defendant claimed that he was standing by the door to his apartment. He was in the company of his wife and they were drinking. The defendant decided that he would go to a liquor store, but in doing so he had to walk by the nearby building where the deceased lived. Defendant carried his .22-caliber revolver because he had $90 in cash in his pocket. At that time the defendant saw the deceased and his son. Deceased began to curse the defendant, and an argument ensued during which time the deceased called defendant a "slick sucker."

Defendant explained that after the argument ensued with the deceased, the defendant began to leave. However, the deceased told defendant that he was going to kill him, and he reached down on the steps of the building and picked up a bag which the defendant recognized as the container in which he had returned the loaded .38-caliber revolver to the deceased earlier that day. The defendant explained that he then backed up and told the deceased not to do anything, but the deceased reiterated that he was going to kill defendant and deceased began to tear open the bag. Defendant then pulled his revolver and fired it at the ground in order to stop the deceased. However, the deceased continued to obtain the pistol from the bag, which caused the defendant to fire at the deceased. The deceased dropped the gun, backed up and stated, "[Y]ou shot me." The defendant then walked away and went back to his house after picking up the .38-caliber gun. The defendant dropped the .38-caliber revolver near his apartment, but he retained the .22-caliber revolver until arrested.

In summarizing the evidence after closing arguments the trial court indicated that it had concluded that the altercation with the defendant's wife and deceased had taken place. However, the court indicated that the

State's witnesses had testified that they had not heard anything mentioned about an argument concerning a gun when the defendant shot the deceased. Nor had the State's witnesses seen the deceased do anything that even suggested deceased's involvement with a weapon at the time of the shooting.

Defendant now contends that his conviction should be reversed because the State's occurrence eyewitnesses gave evasive testimony which was too unreliable to sustain a conviction. Defendant maintains that among other things the three eyewitnesses seemed bound and determined not to reveal anything favorable to the defendant or anything unfavorable about either themselves or the deceased. Defendant notes that the deceased's son was currently on probation for attempted rape and that he had used an alias on prior occasions. Defendant questions why the two women, who testified for the State, would have been seated at the front window just at the time that the altercation occurred and would have been interested in the activities of the deceased and his son. The defendant also notes that there were some inconsistencies in the testimony concerning where the brown bag was which contained a bottle of beer. Deceased's son indicated that he had thrown the bag away after the shooting, and there was also testimony that the bag was either on the steps leading to the building or was in the deceased's son's hands.

■■ The points, which defendant raises concerning the discrepancies of the witnesses' testimony, are minor in nature and not unusual. (*People v. Jordan* (1967), 38 Ill. 2d 83, 88, 230 N.E.2d 161.) The determination of the witnesses' credibility at a bench trial is to be determined by the trial court. (*People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733.) This case presents nothing more than an evaluation of that credibility, and we cannot say that the trial court erred in its determination.

Relying on *People v. Feierabend* (1981), 98 Ill. App. 3d 731, 742, 424 N.E.2d 765, and our prior decisions cited therein, the State requests that defendant's conviction for armed violence based on use of the gun during the murder be reinstated and a sentence be imposed by the trial court. As noted, the trial court had vacated the conviction for armed violence.

In *Feierabend* we upheld multiple convictions for murder and armed violence based thereon. We reasoned that the offense of murder could be committed without the use of a weapon proscribed by the armed violence statute, and the use of a weapon therefore also permitted a conviction for armed violence. To the same effect are our decisions of *People v. Lynom* (1981), 97 Ill. App. 3d 1113, 423 N.E.2d 1281, and *People v. Best* (1981), 97 Ill. App. 3d 1083, 424 N.E.2d 29.[1]

---

[1] The supreme court has recently granted leave to appeal in a case which may present the issue on whether multiple convictions for armed violence and its underlying felony are proper. *People v. Mormon* (1981), 97 Ill. App. 3d 556, 422 N.E.2d 1065.

■■ In order to remand for the entry of judgment for armed violence we would have to apply the holding of *People v. Scott* (1977), 69 Ill. 2d 85, 89, 370 N.E.2d 540. *Scott* held that, where a sentence is not imposed upon one of the convictions, the cause should be remanded to impose sentence in order to render that judgment final.[2] In the present case, however, the conviction for armed violence was vacated. Thus there is no incomplete judgment pending before us requiring that the matter be remanded for the imposition of a sentence. (*Cf. People v. Riley* (1980), 89 Ill. App. 3d 438, 443-44, 411 N.E.2d 1039.) Further, when the trial court vacated the armed violence conviction, the State did not object. (See also *People v. Ditto* (1981), 98 Ill. App. 3d 36, 39, 424 N.E.2d 3.) We therefore reject the State's request.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN, P. J., and PERLIN, J., concur.

---

[2] The supreme court has recently granted leave to appeal from a decision of the Second District Appellate Court pursuant to Supreme Court Rule 23 (73 Ill. 2d R. 23) which may present the issue relating to the divergence of appellate court opinions as to the permissible scope of *People v. Scott* when the defendant appeals. *People v. Dixon* (1981), 96 Ill. App. 3d 1201.