THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL ELZEY, Defendant-Appellant.

First District (4th Division)   No. 1—87—2393

Opinion filed September 13, 1990.

Randolph N. Stone, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and

Laurie N. Feldman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial, defendant, Michael Elzey, was found guilty of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1) and armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2). Defendant was sentenced to 18 years in the Illinois Department of Corrections. On appeal, defendant raises the following issues: (1) whether he received effective assistance of counsel at a post-trial hearing; (2) whether the trial court failed to exercise its discretion properly in determining whether the probative value and the need for evidence of other crimes outweighed the prejudice to him; (3) whether the trial court considered an improper factor in imposing sentence; and (4) whether the trial court erred in refusing to order the State to disclose favorable work product.

We affirm.

At trial, the evidence established that on October 20, 1980, at approximately 10:30 p.m., complainant and defendant exited a bus at the corner of 67th Street and Langley Avenue in Chicago. Complainant got off of the bus from the front and defendant exited from the rear. As complainant walked in the direction of her residence, she noticed that defendant was following her. After walking some distance behind complainant, defendant ran up to complainant and told her to give him her wallet or he would kill her. Complainant observed a gun in defendant's hand. She also noticed that he had what she described as a "wandering eye."

Complainant then searched through her handbag for her change purse. When it became apparent that complainant could not locate her change purse, defendant grabbed her arm and started to drag her down the street. Defendant punched her in the face and again threatened to kill her when she tried to resist him.

Richard Adams, complainant's 14-year-old neighbor, saw defendant holding complainant's arm. When defendant noticed that Adams was looking at him, he pointed his gun at Adams and told him to go back the other way. Adams ran home and called the police. Adams also noticed that complainant's assailant had peculiar eyes.

Defendant then dragged complainant into an alley and down into the basement area of a building where he raped and robbed her. Before and after raping her, defendant looked between complainant's legs, using a flashlight.

Complainant then dressed and ran home. After telling her mother that she had been raped and robbed, her mother called the police.

Complainant later identified defendant as her assailant from a photographic display and a lineup. Adams also identified defendant, from a photographic display, as the man who pointed the gun at him.

Another alleged victim of rape by defendant was also called upon to testify against him. This victim testified that on January 26, 1981, at approximately 9:45 p.m., she exited a bus on 67th Street and Kenwood Avenue in Chicago. Defendant also got off of the same bus and began to follow her. When defendant caught up with complainant, he pulled a gun on her. He told her to continue walking. As they walked, he held her around the waist and pointed the gun at her side.

Defendant led her to an abandoned building where he raped and robbed her. Before raping her, he also looked between this victim's legs, using a flashlight. After the rape, the victim immediately notified the police, who later accompanied her to the scene of the crime. They, however, were unable to locate her assailant.

The next time the victim saw defendant was, by coincidence, at Wyler's Children's Clinic on February 25, 1981. The police were able to apprehend defendant at that time.

Defendant presented various witnesses that contradicted complainant's testimony regarding the lighting conditions. The defense also brought out the fact that the other victim did not describe her assailant as having a wandering eye to the police officers investigating the incident. There was also testimony that the type of secretion testing performed on defendant does not produce conclusive results.

On March 2, 1982, after hearing all of the evidence, the jury returned guilty verdicts on the rape and armed robbery charges against defendant. Post-trial motions and a sentencing hearing were scheduled to be held on March 31, 1982. However, prior to the scheduled sentencing date, defendant was found unfit for sentencing. At this time, defendant's trial counsel also raised the issue of defendant's fitness at the time of trial. Trial counsel expressed concern as to whether he could effectively represent defendant since he had failed to raise the issue of defendant's fitness at the time of trial. Counsel then moved for the appointment of a new attorney to represent defendant on the limited issue of his fitness for trial. The trial court ordered defense counsel to continue his representation of defendant until defendant became fit for sentencing.

Defendant was subsequently found fit for sentencing. A sentencing hearing was scheduled for March 23, 1983. However, one day before the scheduled hearing, defendant escaped from custody. He was not apprehended until almost four years later.

Defendant was again evaluated for his fitness for sentencing.

Trial counsel renewed his request that the court appoint another attorney on the issue of defendant's fitness at the time of trial. Subsequently, defendant was found fit for sentencing based on the opinion of Dr. Robert Reifman, director of the psychiatric institute of the circuit court.

At a later hearing, trial counsel questioned Dr. Reifman concerning defendant's fitness for trial. Dr. Reifman opined that defendant was "probably fit for trial at the time." Trial counsel then filed an affidavit, at the court's suggestion, relating that he saw no noticeable change in defendant's behavior from the time he began to represent defendant to the time defendant was found fit for sentencing. The trial court then found defendant fit at the time of trial and denied counsel's motion for a new trial. Defendant was later sentenced to a term of 18 years. It is from this decision that defendant appeals.

The first issue defendant raises for our review is whether the trial court erred in failing to appoint independent counsel to represent him on the issue of his fitness for trial. The question of fitness for trial was raised by defense counsel only after defendant was found unfit for sentencing. Defendant reasons that his trial counsel's competency was placed in issue since he failed to raise the question of fitness during trial. Moreover, defendant argues, the court's refusal to appoint independent counsel to represent him on the issue of fitness for trial was error since his trial counsel would be restricted in his advocacy of this issue. Trial counsel, defendant claims, put his own performance at trial under scrutiny for overlooking this issue initially. Defendant contends that counsel's continued representation of him created a *per se* conflict of interest. We disagree.

■ A defendant found unfit for sentencing does not necessarily raise a *bona fide* doubt as to the defendant's fitness to stand trial, since the cause of unfitness may be due to factors that arose after trial. (*People v. Riley* (1980), 89 Ill. App. 3d 438, 442.) Whether a retrospective finding of unfitness to stand trial applies depends upon the circumstances of each case. (*People v. Brown* (1985), 131 Ill. App. 3d 859, 865-66.) Whether a *bona fide* doubt of fitness has been raised is a decision resting largely within the discretion of the trial court as the trial court, unlike a court of review, is in a position to observe defendant and evaluate his conduct. *People v. Murphy* (1978), 72 Ill. 2d 421, 431.

■ In the instant case, the trial court found that defendant had been fit to stand trial based on its own observations of defendant during and after trial, defense counsel's observations of defendant, and expert opinion that defendant was "probably" fit to stand trial. How-

ever, the decision of the trial court that defendant challenges is not whether the trial court properly concluded that he was fit for trial but whether the trial court erred in failing to appoint independent counsel to represent him on this issue.

Defendant equates the failure to raise this issue of fitness or sanity at the time of trial to ineffective assistance of counsel. This argument is simply without merit. As the Illinois Supreme Court has stated:

> "[T]he mere fact that counsel failed to advise their client to defend on [insanity] grounds does not amount to a denial of due process. Insanity is a defense to be asserted at the trial as any other defense; and the decision not to advise such a defense, even if it were a mistake, does not of itself show that the defendant was inadequately represented. Mistakes of counsel will not amount to a denial of due process unless on the whole the representation is of such a low caliber as to be equivalent to no representation at all, and to reduce the proceedings to a farce or a sham." *People v. Heirens* (1954), 4 Ill. 2d 131, 143-44.

There is nothing in the record to indicate that defendant was not properly represented, either at trial or at any of the post-trial proceedings. Further, defendant cites to no authority to support his theory of a *per se* conflict of interest. We find no cases which mandate the appointment of independent counsel in circumstances such as this. We, therefore, find that the trial court did not err in failing to appoint independent counsel on this post-trial issue.

The next issue defendant raises is whether the trial court failed to balance the probative value and need for other crime evidence against the prejudicial impact on the jury. Prior to trial, defendant filed a motion *in limine* to preclude the introduction of the other crime of rape that was allegedly committed by him. The trial court denied defendant's motion on grounds that, pursuant to *People v. Tate* (1981), 87 Ill. 2d 134, and *People v. Wojtasik* (1982), 104 Ill. App. 3d 263, the crime sought to be admitted was sufficiently similar to the crime charged so as to warrant its admission. However, defendant argues that the trial court neglected to rule on whether the probative value and need for introduction of the crime outweighed the prejudice to defendant, regardless of whether the crimes shared common characteristics.

Although defendant arguably waived this issue by his failure to raise an objection to the admittance of this evidence on grounds that the trial court failed to apply a balancing test, we find that defendant

has failed to prove that the court did, in fact, fail to balance these competing interests. The trial judge stated, after reviewing defendant's motion *in limine*, that he was cognizant of the law with respect to the admission of prior crimes. We cannot conclude that the balancing test was not applied. Further, there is no requirement that the trial court articulate the factors considered in its application of the balancing test. (*People v. Cornes* (1980), 80 Ill. App. 3d 166, 176.) A reviewing court will assume that the trial court gave appropriate consideration only to relevant factors in balancing these competing interests. (*People v. Purnell* (1984), 129 Ill. App. 3d 253, 260-61.) We, therefore, find that defendant's contention fails with respect to this issue.

■ Next, defendant argues that the trial court imposed sentence on the basis of conclusions not supported by the facts of the case. Specifically, defendant points to the trial court's description of the crime of rape:

> "It is probably the most horrifying kind of victimization another human being can be submitted to. It's probably worse than murder because the rape victim lives to think about it and the murdered victim doesn't."

Defendant objects to the trial court's assumption that the complainant will live on to think about this incident. Although this issue was arguably waived by defendant's failure to raise an objection after the statement was made, we find defendant's argument without merit, as defendant takes this remark out of context. The trial court was characterizing the seriousness of the crime of rape, in general. The court was not referring specifically to complainant or her mental state as a result of the crime. Further, the statement was made in the context of a lecture to defendant. The court was responding to defendant's speech concerning the reformation of his behavior, among other topics. After making the remark, the trial court went on to commend defense counsel on his representation of defendant.

The record simply does not support defendant's assertion that trial court considered complainant's reliving of the rape as a factor in aggravation. Rather, we find that the court was merely describing the seriousness of the crime of rape, in general. The seriousness of the crime charged may properly be considered as a factor in aggravation. *People v. Saldivar* (1986), 113 Ill. 2d 256, 268-69.

■ Finally, defendant contends that the trial court erred in refusing to order the State to disclose favorable work product. Prior to the introduction of the other crime evidence, defendant sought discovery of the second page of a felony review memorandum which noted why

charges should not be pursued in the other rape case against defendant. The State explained that although the second page could not be located, it was not discoverable because it was the work product of one of the assistant State's Attorneys who noted only conclusions as to why he rejected the charges of the other crime.

The author of the memorandum explained that whatever he wrote in a felony review memorandum he would also copy that same information into a log. The log which contained the information on the second page of the memorandum in question was then presented to the court for an *in camera* inspection. Defendant contends that excerpts describing the other crime and the reasons noted as to why the author of the memo felt that charges should not be brought against defendant should have been introduced.

Specifically, the author of the memo noted that charges should not be brought because (1) the lighting at the time of the incident was minimal; (2) there was no corroborating evidence to show that defendant was connected with the rape; and (3) the identification of defendant was suspect, since a significant amount of time had passed between the arrest and the occurrence.

The trial court ruled that the log contained work product which was not discoverable. It was also found that the State's thought process in determining whether to bring charges against defendant for the alleged other crime was not probative of the instant case.

Supreme Court Rule 412(j)(i) does not require the disclosure of legal research, reports, or memoranda to the extent that they contain conclusions, opinions, or theories of the State or of defense counsel. (107 Ill. 2d R. 412(j)(i).) The log excerpts were properly found to be work product under the rule, since they were clearly conclusions or theories as to why charges should not be brought.

As an exception to the work product rule, *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, requires the disclosure of evidence favorable to the accused. We, however, find no violation of *Brady* since the information defendant sought to reveal to the jury was brought out in open court. (*People v. Mireles* (1979), 79 Ill. App. 3d 173, 195-96.) The victim of the other crime testified that the lighting was minimal and the State conceded that the lighting was minimal; the victim also testified that she identified defendant approximately one month after the alleged rape; and the defense argued, in closing, that the identification of defendant as the perpetrator of this other crime was suspect. We, therefore, find that defendant's argument also fails with respect to this issue.

For the foregoing reasons, the decision of the circuit court is af-

firmed. As part of our judgment, we grant the State's request that defendant be assessed $75 as costs and fees for this appeal pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, and *People v. Nicholls* (1978), 71 Ill. 2d 166.

Affirmed.

LINN and JIGANTI, JJ., concur.